Moll v. Main Motor Company.

4-8435                                          210 S. W. 2d 321

Opinion delivered March 8, 1948.

Rehearing denied May 10, 1948

*W. A. Leach,* for appellant.

*M. F. Elms,* for appellee.

MINOR W. MILLWEE, Justice. William Moll was plaintiff in the circuit court in an action of unlawful detainer against Main Motor Company. The cause was tried before the court, without a jury, on oral testimony and a stipulation of facts which, in part, reads as follows:

"In the latter part of the year 1944 the property described and set forth in plaintiff's complaint was owned by J. H. Martin who was a resident of Los Angeles, California. The defendant rented said property from the said J. H. Martin on a month to month basis at the rate of $65 per month payable in advance. The defendant is a corporation organized under the laws of the State of Arkansas and its business consists of the sale of automobiles, electrical boxes or frigidaires, gas cooking stoves or ranges and many other articles and also has a large repair department for automobiles and machinery.

"On or about the first of November, 1945, the plaintiff purchased the property in question from J. H. Martin. The defendant at all times after renting said property paid its monthly rent in advance at the rate of $65 per month and continued to pay the same to the plaintiff until January 1, 1946. In the latter part of November, 1945, the plaintiff served a written notice upon defendant that its tenancy would be terminated on January 1, 1946,

and it was demanded that defendant quit and deliver up possession of said property to plaintiff as he wished to occupy the same himself.

"The defendant was engaged at the time in constructing a large building on Main Street wherein it proposed to house its business. The defendant on January 1, 1946, had not been able to complete its building because it was impossible to obtain materials in sufficient quantities because of the great shortage and delay in procuring same for it to have its building near completion or in condition so it could move into it. It was also impossible for the defendant to rent other quarters in Stuttgart in which to move its business. For these reasons the defendant did not vacate the building belonging to the plaintiff.

"On December 29, 1945, the defendant delivered to the plaintiff through United States mail its check for $65 in payment of the January, 1946, rent. On January 2, 1946, the plaintiff returned the check to defendant with the following letter, to-wit:

" 'This will acknowledge receipt of your check for $65 as payment for rent for the month of January, 1946.

" 'I had previously given you the statutory notice that your lease contract was terminated at the end of the monthly period beginning December 1, 1945, as I desired to occupy the premises myself at the earliest possible date.

" 'Not wishing that your tenancy longer continue, I am returning you herewith the check and again request that you deliver the possession of the property over to me.'

"On January 22, 1946, the plaintiff wrote the defendant the following letter:

" 'You may disregard the notice heretofore served upon you to vacate the property in which you are now located and operating, and let me have check to cover the rent for the month of January.

" 'You are hereby notified that the rent on said premises which you are now occupying beginning with

February 1, 1946, will be two hundred dollars per month, payable monthly in advance. So if you desire to occupy the premises after February first, let me have your check for two hundred dollars covering that month's rent.'

"Following this letter on January 22, 1946, defendant returned its check for $65 to plaintiff for the January rent which he accepted and cashed.

"On January 31, 1946, the defendant sent to plaintiff a check for $65 for payment of the February rent, but the plaintiff refused to accept same and returned it to defendant with the following letter:

" 'I am returning herewith your check dated 1-31-1946, No. 1004, in the sum of $65 which you say is rent for the month of February.

" 'During the month of January you were notified that the rent for the building which you are now occupying would be $200 per month. Evidently you have overlooked that letter. The amount due is $200, and its payment will for the time being prevent the institution of eviction proceedings.'

"On February 5, 1946, the plaintiff caused the following notice to be served upon the defendant:

" 'To Main Motor Company:

" 'You are hereby notified that the monthly rental on the following described property lying in the City of Stuttgart, County of Arkansas, State of Arkansas, to-wit: (property described) remains due and unpaid and that therefore I am terminating your tenancy.

" 'You are further notified to quit and deliver the possession of said property up to me immediately after the expiration of three days from the date this notice is served upon you.'

"On February 12, 1946, this suit was filed to oust the defendant from the property. . . ."

It was further stipulated that defendant mailed its check to plaintiff for $65 for the use and occupancy of the premises, in advance, for the months of March, April,

and May, 1946, but plaintiff returned and refused to accept these checks; and that defendant had completed its own building to the extent that it could be occupied on May 28, 1946, when defendant moved and surrendered possession to plaintiff.

In his complaint filed February 12, 1946, plaintiff alleged that defendant failed and refused to pay rent of $200 for the month of February, 1946, after being given due notice on February 5, 1946, that its tenancy was terminated. It was further alleged that defendant refused to quit and deliver possession of the premises within three days after service of said notice, and was unlawfully detaining the property. In addition to his prayer for possession, plaintiff asked judgment for $200 rent for February, 1946, damages of $1,000 for detention of the property, and such further rents and damages as might accrue pending suit.

The answer of defendant was a general denial of the allegations of the complaint and a specific denial of any agreement on its part to pay a monthly rental of $200. Defendant also tendered with its answer the sum of $260 (being the sum of $65 per month for the months of February to May, 1946, inclusive) and such costs as had accrued to the date of the answer. The tender was refused by plaintiff. Defendant also alleged that a termination of its tenancy on February 5, 1946, would make it liable as a trespasser for only a reasonable sum monthly for the use and occupancy of the building.

Oral testimony was introduced by defendant showing the reasonable rental value of the building to be $65 per month; that the building was in a dilapidated and run-down condition and defendant was compelled to make extensive repairs at its own expense in order to occupy it; and that the premises remained unoccupied from the time defendant surrendered possession until November, 1946, when plaintiff began extensive repairs on same.

At the conclusion of the hearing the trial court, after making certain findings of fact, made the following declaration of law at defendant's request: "The Court declares as a matter of law that no contract, express or

implied, ever existed between plaintiff and defendant whereby plaintiff was entitled to charge and collect from defendant rentals of $200 per month for the months of February, March, April and May, 1946; but, on the other hand, declares as a matter of law that plaintiff is entitled to a reasonable compensation for defendant's use and occupancy of said building for said months; that under all the circumstances $65 per month or a total of $260 is a reasonable compensation; that defendant at the outset of this trial offered to confess judgment for said sum. Therefore, the recovery should be for $260 and costs up to that time." Judgment was entered accordingly and the court overruled plaintiff's motion for treble damages claimed under Act No. 373 of 1947.

For reversal of the judgment it is contended that the trial court erred in refusing to hold that a new contract was entered into whereby defendant became obligated to pay rents at the rate of $200 per month beginning with the month of February, 1946. Plaintiff argues that defendant manifested no objections to the rental stipulated in the letter of January 22, 1946, and by its action and conduct after receipt of such letter accepted plaintiff's demand for increased rent at the rate of $200 per month.

The authorities generally are not in harmony on the effect incidental to a tenant's holding over after expiration of a rent period and notice by the landlord of an increase in rent. In 32 Am. Jur., Landlord and Tenant, § 950, it is said: "In about half of the jurisdictions wherein the question has arisen, the view has been taken that by holding over beyond the term, after having been seasonably notified that there will be an increase in rent after the term, the tenant becomes liable for the increased rent, notwithstanding his distinct refusal to agree thereto. In the other half of the jurisdictions wherein the question has arisen, the view has been taken that a notice of an increase in rent does not bind the tenant thereafter holding over beyond the term if, within proper time, he expresses his nonassent to the terms of the notice."

In the case of *Colyear* v. *Tobriner*, 7 Cal. 2d 735. 62 P. 2d 741, 109 A. L. R. 191, the tenant was renting the prem-

ises for $45 per month and the landlord gave notice that the month to month tenancy would terminate on a certain date and if the tenant continued in possession beyond that date, he would be liable for rental at the rate of $750 per month. The California court held that the tenant had not expressly or impliedly consented to the increased rent, independently of a state statute which authorized an increase in rent upon service of a 30-day notice. Many cases from other jurisdictions are reviewed in the annotation to this case. In a discussion of the reasons forming the basis for conflicting holdings on the question, the author of the annotation, at pages 198-199, says:

"The doctrine, as recognized in some of the cases, that a tenant who holds over after being notified of an increase in rent for the succeeding term, or rent period, becomes liable to pay the increase demanded, whether he actually assents thereto or not, and notwithstanding his objections and protests, is founded on the idea that a landlord is absolutely entitled to fix the terms upon which his property may be held by another. The contrary view is founded upon the idea that the law should not imply a promise contrary to obvious reality, and that justice is done by permitting the landlord to recover the reasonable value of the tenant's unauthorized occupancy, where he does not desire, or may not be permitted, to hold the tenant for a new term, or period, at the formerly established rent. It seems clear that the latter doctrine is the safer one, as applied to all cases, since under the former a court will sometimes find itself called upon to enforce demands which are wholly exorbitant and ruinous to the tenant. . . .

"It is of some significance that the cases are few in which a claim for excessive rent, pursuant to notice, has been sustained. The writer suggests that even though a tenant by continuing in possession beyond the term, or rent period, may, notwithstanding his actual nonassent, be treated as assenting to an increase in rent of which he received seasonable notice, such assent ought not to be legally inferred where the new 'rent' demanded is not intended as a reasonable charge for the use of the prem-

ises, but in fact represents an attempt to impose a harsh penalty for continued occupancy.''

In 52 C. J. S., Landlord & Tenant, § 506, the applicable rule is stated as follows: ''A notice by a landlord to a tenant that, if he continues to occupy the premises beyond the present term, he must pay an increased rent, naming the sum, will not bind the tenant, although he holds over, unless the tenant expressly or impliedly consents to such increase of rent. If, however, the tenant remains in possession and holds over after receiving notice from the landlord that a greater rent will be required than that stipulated in the lease or required by the terms of the prior tenancy, his assent to the changed terms will be implied, and the rent will be increased, even though the tenant objects to the new condition, provided the holding over is voluntary and not unavoidable. If the tenant protests against the increase and explicitly refuses to pay it, he may not be held liable therefor merely by the act of holding over, since no new agreement may be implied, but he is liable for reasonable use and occupation. Also, the tenant is not liable for the increased rent where a tenancy exists governing the amount of rent and such tenancy is not terminated in the statutory manner.''

When the facts and circumstances of the instant case are viewed in the light of the above rule, we think there was substantial evidence to support the finding of the trial court that defendant did not, either expressly or impliedly, consent to the increase of rent to $200 per month. In the letter of January 22, 1946, plaintiff revoked the 30-day notice that he had previously given and notified defendant that the rent would be $200 per month beginning February 1, 1946. The mere return of the $65 check for the January rent by defendant did not in itself amount to an acceptance of the stipulated increase for future rents. On January 31, 1946, and prior to the commencement of the February term, defendant mailed its check for $65 to plaintiff for the February rent. This action was taken within nine days of the notice of increase in rent and was inconsistent with an acceptance of the proposal made by plaintiff. It was a

clear manifestation of defendant's refusal to be bound by a new contract and was repeated each month thereafter until defendant vacated the property.

In addition to the dissent from the proposal for increased rentals, defendant's holding over was involuntary and unavoidable. A serious shortage of materials and labor had prevented it from completing its own building by January 1, 1946, and there were no other quarters available for rent in the City of Stuttgart. The inability to find other premises for rent on account of a serious housing shortage brought on by war was held to prevent the implication of acceptance of the landlord's demand for increased rentals in the case of *Kleinman* v. *Field,* 110 Misc. 111, 179 N. Y. S. 748.

The trial court overruled plaintiff's motion for treble damages under Act 373 of 1947. This act, if valid, amends § 6050 of Pope's Digest and did not become effective until a short time prior to the trial of this action on June 17, 1947. By the terms of the act it is only applicable to cases where the "finding or verdict" is for the plaintiff. The defendant tendered the sum of $260 and accrued costs before trial and this offer was refused. Since the trial court did not incorrectly find that defendant was not bound on a new contract for increased rentals, and only sustained a recovery in an amount which defendant offered to pay before trial, the "finding" was against the plaintiff. Inasmuch as the act, if valid, would be inapplicable here, we find it is unnecessary to determine its constitutionality.

We find no error, and the judgment of the circuit court is affirmed.